is 20-5020 Reeves v. Enterprise Products Partners, and for the appellant is Ms. Cowan. You may proceed. May it please the court. Thank you, Your Honor. Rachel Cowan on behalf of the appellant Enterprise Products Partner. More than a decade ago, the United States Supreme Court ruled in Arthur Anderson v. Carlyle that a non-signatory to an arbitration agreement may enforce that agreement under traditional principles of state law, including estoppel. Today we're here to answer the question whether plaintiffs Daryl Reeves and James King should be estopped from refusing to arbitrate their claims for unpaid overtime under the Fair Labor Standards Act that's been filed against their employer's customer, Enterprise Products Partners. Mr. Reeves and Mr. King each worked for Cypress and Kestrel, respectively, as exempt from overtime under the FLSA and paid them a day rate. Each, before commencing employment, signed an arbitration agreement promising to arbitrate their disputes that arose out of their employment, including any disputes that arise out of or relate in any way, including overtime claims. Only after each promised to arbitrate their employment-related disputes were they assigned to perform inspection services at Enterprise Products Partners. Despite this promise, Reeves and King have now brought claims in federal court under the FLSA seeking to represent a collective that encompasses all pipeline inspectors employed by any vendor of Enterprise who was paid a day rate with no overtime. Mr. Reeves and Mr. King allege that Enterprise, which is their employer's customer, jointly employed them and therefore is also liable for the failure to pay them overtime. They simultaneously, though, deny they are duty-bound to arbitrate these employment-related disputes because Enterprise is not a signatory. Enterprise seeks, under Oklahoma law, to stop the plaintiffs from avoiding their promise to arbitrate overtime disputes because it would be inequitable. If I could stop you there, is there any reason that Cypress needs to be in this case? I mean, I suppose they could, but they weren't named. Couldn't Mr. Reeves obtain a judgment against Enterprise without Cypress even being in the same zip code? So, Mr. Reeves or Mr. King could certainly obtain a judgment against Enterprise, but he neither can prove their claim against Enterprise without bringing Cypress and Kestrel into the dispute because Cypress and Kestrel have all of the witnesses, the documents, and the information as to how they were paid, and Cypress and Kestrel will be dragged into the as adopted by High Sierra and as adopted by Sonoka by the Oklahoma Appellate Courts. And so it is not possible to proceed against Enterprise without the participation of Kestrel. Those would just be fact witnesses. They don't need to be a party for any of that. If you're asking me whether Cypress or Kestrel is a necessary party under Rule 19, they are not. We certainly could intervene under Rule 24. Cypress and Kestrel could intervene under Rule 24 as a matter of right. They have not done so as of this point. But again, whether or not they're going to be dragged in is exactly what matters under the Oklahoma standard. It does not matter who from whom the plaintiff seeks relief. What matters is who is the real party in interest. And that is precisely what Grigson in the Fifth Circuit sets forth. And I would point this court to the fact that in Grigson, the people who sought to compel arbitration, I'm sorry, the people with whom Mr. Grigson had executed the arbitration agreement also were not parties to the dispute and from whom they did not seek relief. There in Grigson, Mr. Grigson had acquired or purchased the rights to a film, The Texas Chainsaw Massacre, and they had obtained distribution rights or contracted with a third party to distribute the film. The film distributors delayed distribution and they originally sought relief from them for the delay, a breach of contract. That dispute was compelled to arbitration. Mr. Grigson was reporting that they had induced the delay because they perceived that film no longer consistent with their brand. And what the Fifth Circuit recognizes, look, you all have attempted to evade your duty to arbitrate by dropping your claim against the signatory to the agreement, recasting your claim as one against these additional parties who may also have culpability, but for whom you will inextricably be intertwined with the distributor who will have to come to the proceedings and incur expense and time. And that's the quote from Grigson, that because the actor and his agent will also pull in, or the plaintiffs will also pull in the distributor, that distributor has been deprived of their bargain to litigate in a more efficient forum. And that is what the Oklahoma court adopted wholesale in Sonoka and in High Sierra. Counsel, let me ask you in regards to those two Oklahoma Court of Appeals cases, the Supreme Court of Oklahoma has not adopted that, have they? So their presidential value is of no That is not accurate, Your Honor. While there is a mechanism for the Oklahoma Supreme Court to endorse or put their imprimatur on an appellate court decision, that is rarely exercised, and it is not required for the opinions to have precedential value. I don't quite think that's exactly right. But I do know that if the Supreme Court hasn't approved the Court of Appeals cases, then the Oklahoma Supreme Court has not adopted that as the law of Oklahoma. That is true, Your Honor. The Oklahoma Supreme Court has not officially adopted that. But I would suggest that this court in Stickley v. State Farm has made clear that when you're making an eerie guess, the best signal as to where the state would land is decisions of the appellate court. And unless there is persuasive evidence to the contrary, you are to adopt it. And here, there is no persuasive authority. And I would point you to Long v. You look like you want to ask a question, Your Honor. I'm sorry. I was just going to comment that the reason why I'm so familiar with that is because years ago, I tried to divine what the Oklahoma Supreme Court would do. And I put the opinion out. Two years later, they said I was all wet. So I wanted to be sure that we were on the same road. Yes, sir. I understand. Your Honor, I would point you, though, to Long v. DeGrier, because I do think we have some guidance from the Oklahoma Supreme Court. In Long v. DeGrier, Ms. Long had an account with Kidder Peabody. She had executed a arbitration agreement to litigate any disputes with the brokerage firm over the handling of her account through arbitration. And there too, after suing the brokerage firm in federal court, she was compelled to arbitration by the federal court. She turned around then and sued the individual broker, Mr. DeGrier, and said, look, I don't have an arbitration agreement with Mr. DeGrier, and he too is culpable. And the Supreme Court said, look, this is not appropriate. The only way that Kidder Peabody can act is through its representatives. And if you've agreed to arbitrate with Kidder Peabody, then you're duty-bound to arbitrate with Mr. DeGrier, even though he's not signatory. And that's precisely the situation here. Here we have an outsourcing arrangement whereby enterprise products partners outsource the inspection of their pipelines to firms like Kestrel and firms like Cypress. And enterprise relied upon those inspection companies to have some supervisory authority. It is inevitable that those are the firms that engaged in the very practices which the plaintiff now claims violate the FLSA. And as a result, enterprise likewise can only act through the testing firms, I'm sorry, through the inspection firms to whom it is outsourced. So Kidder Peabody adopts that rationale. And I do think that we see indicative in the adoption of the Grieg standard by the Oklahoma courts, that the Oklahoma appellate courts have absolutely predicted precisely where the Oklahoma Supreme Court would go. I would also- Why don't we ask what would be wrong with asking the Supreme Court of Oklahoma to wade in on that very issue? Your Honor, I actually think that if you have any concerns that you might get the issue wrong, we think it would be a perfectly acceptable solution to certify to the Oklahoma Supreme Court. But if you were to make the eerie guess, we believe the eerie guess is proper that the Oklahoma appellate courts have accurately predicted by adopting Grieg's, which by the way has been adopted elsewhere. This is not a rogue decision, the decisions, but I think that would be appropriate. Was the district court asked to do that? We did not. We did not ask the district court to certify, Your Honor. I would note, so this is not, interestingly, this is not a new case. Mr. Birch and I have been litigating this issue around the country in various other states, including Justice Carson, Judge Carson down there in New Mexico. And so the district court there has been pondering whether it was appropriate for it. I think it is a fine and acceptable solution if you have such concerns. Who told the, who told Reeves at all, you know, how many hours they needed to work in a particular week? You know, whether or not they were going to supervise other people.  So, in the record, right now, we say that is Cypress and Kestrel. I would imagine on any given day there could be things going on that would have Enterprise particularly dictate what's happening on a project that could affect that. But Cypress and Kestrel are the people that set the pay, the hours, at all. Okay. And again, we're constrained to the record that's before the court, and that record is unrebutted. And here, we've put in, Enterprise has, through Kestrel and Cypress, declarations that make clear that Cypress and Kestrel control those issues. And the record also... Your position, then, that Cypress and Kestrel committed the misconduct here, if it's proven up. That's right. And Enterprise is basically an innocent bystander, to some extent. Yes, we are not the... They rely on the independent contractor to provide these services. We hired an independent contractor precisely because we lack the expertise and the independence to do this. And in fact, if you understand what's happening here, and it's in our brief, we, Enterprise, will build a pipeline. We hire or repair or maintain it. And we hire contractors to do that work. But then we hire an independent inspector to ensure that the contractor is doing what they are supposed to be doing. And those independent inspection companies are firms like Kestrel and Cypress. And it's why we have multiple vendors. Are those allegations... Your motion to compel? I believe that we do have those allegations, those facts in our brief. And we cite in our appendix the general nature of this business. Because if I'm going to apply the two-pronged approach for equitable estoppel, I should be able to find adequate allegations of independent and concerted misconduct by Cypress, for example. So, Your Honor, in this record, there are independent. That is there. But I would point you back to the Howard v. Ferrell Gas Partners, which was authored by Justice Gorsuch. On a motion to compel arbitration, you actually are obligated to pierce the pleadings and look to the record as a whole. And if there are any disputed facts, then the district court should have had a trial. Again, we submitted uncontroverted declarations from Cypress and Kestrel, evincing that they exert all of the control that is at issue in the FLSA underlying dispute. And, in fact, we put every paycheck into the record for both Mr. King and Mr. Reeves. And so the record is quite clear that Kestrel and Cypress employed Mr. Reeves and Mr. King, and that Cypress and Kestrel set their pay, set their duties. That is unapologetic. Enterprise has a pretty good claim against Kestrel and Cypress, then, for indemnification. Could you bring them into this lawsuit? Enterprise certainly could. And that's precisely, again, why the interdependent and concerted misconduct rule applies. Because, again, I come back to Griggs and to Sunoco, which say, if the signatory here, Kestrel or Cypress, is going to be pulled in, and you raise the exact concern that Cypress and Kestrel will be dragged in for, indemnification, then they are the real party in interest. And that is precisely why the courts have stopped them. I see I'm running out of time, Your Honor, and I failed to reserve any time. I'll give you a little bit of rebuttal. Thank you, counsel. Thank you. Let's hear from Mr. Church. He's muted. You're on mute. Thank you, Your Honor. There you go. Good morning, and may it please the court. I think everybody on this call can agree that arbitration is a matter of consent and not coercion, and that arbitration agreements are merely contracts. Nothing less, for sure, but also nothing more. And there is nothing in the Federal Arbitration Act that authorizes a court to compel arbitration by any parties that are not already covered by an arbitration agreement. So it's a little odd, from our perspective, that we're here at all, since everyone agrees that Enterprise does not have an arbitration agreement with Daryl Reeves or James King, and had no expectation that any dispute with those gentlemen would be resolved anywhere other than in court. Nonetheless, the folks at Enterprise say that they can compel arbitration because, according to them, Mr. King and Mr. Reeves are bringing claims that are intertwined with some companies, and those third-party companies happen to have contracts with Mr. King and Mr. Reeves that contain arbitration clauses. Counsel, let me ask you this question, and I'm going to read it to you because it's so important in my understanding, because if you're right and you to court, there's certain risks that are involved. And my question to you is, do you still affirm this claim that joint employer theory of liability and affirm that plaintiff's legal theory is that Enterprise was the sole employer? So, I reject the notion that there is this sole employer concept under the FLSA. More than one entity, I'm sorry, Your Honor. Go ahead, I want to hear that. More than one entity can employ an employee. Joint employment, in my view, of the Fair Labor Standards Act occurs when you are trying to hold one employer liable for someone else's violations of the FLSA. And let me give you a concrete example using the situation that we have here. The folks at Cypress, for example, are a staffing company, and they place these hours, told them what to do, told them what to wear, told them what they were supposed to do, all that good stuff. In our view of the world, set to pay everything, right? The folks at Cypress could have staffed, could have helped Mr. Reeves find a job at another company as well. If I could interrupt, what you just, I think, I thought I heard Ms. Cowan say the opposite as far as setting hours, setting pay, control of their work duties. Did I miss, I'll give a rebuttal, but your view is that all the control here, setting pay, setting hours, was by Enterprise? Yes. I mean, the folks at, and I heard Ms. Cowan say that there is evidence in the record that establishes something different, evidence from the employee, you know, the staffing company who they say are the employers, and I'm looking at the declaration that was actually attached by the folks at Enterprise, and that is at our appellee's appendix, page 20, and all it says is that Mr. Reeves was a former employee of Cypress. Let me be sure that you've answered my question. You just claimed joint employer theory that's being argued here, and your argument is that Enterprise is the sole and only employer of your client. And again, I reject the notion. Well, answer it first, and then the air again. You're disavowing the joint employer theory, and your argument is that Mr. Reeves is the sole employee of Enterprise. And again, I believe that that misstates liability under the FLSA. A joint employer liability has to do with spreading of liability across different employers, and such that if Mr. Reeves had been assigned to multiple companies, right, that the folks at Enterprise would be liable not just for the work he did for them, but for the work he did for Chevron, and the work he did for Exxon. That's not my point. Are you arguing in this case that Mr. Reeves is the sole employee of Enterprise? No other one that your argument is that Mr. Reeves is employed by, paid by, does the work by, and controlled by Enterprise alone? That, our theory does not depend on that. Okay, so I think that's a calls for a yes or no. I think your answer to that is no, because you don't think that the law requires that. And that's fair, Judge Carson. Okay. As phrased, Your Honor, my answer to that question would be no. Okay. I'd like to explain why. It's your time. Mine was just a question. Sure, Your Honor. So, in our view, joint employment under the FLSA has to do with the spreading of liability. It does not have to do with whether or not you are liable for work performed for you. That is the employer standard, right? Whether or not Mr. Reeves was staffed to another company, if he's a joint employer, if Enterprise and the folks at Cypress, for example, were joint employers, then Enterprise could be liable for work done wherever Mr. Reeves performed work for the folks at Cypress, because they are jointly together. And so, they are liable for that. Our theory is far more narrow. Our theory is that Enterprise is liable for the work performed for it. Okay. That is our theory. Let me ask you a question. So, Cypress and what's in Kestrel, are you suing both of them also in separate lawsuits? No. Are you suing either of them in separate lawsuits? By Mr. Reeves or Mr. King, or by other people? By Mr. Reeves or Mr. King? No. Okay. I thought they were involved in the Fithian case. Mr. Reeves and Mr. King were involved in the Fithian case. They are no longer. They are out of that case. Was there a time that they were both involved in two cases? No. Okay. So, just to be clear, the folks at Cypress deny the fact that Mr. King or Mr. Reeves were ever part of Fithian. They said that they were not permitted to join that case, and they were never part of that. So, that's my position is that they were part of it for a time. Enterprise's position is that they were, at least at that time, is that they were not. Okay. Well, let me ask you another question, and this may ultimately make no difference. Are you still involved in that case? So, you know anything about it? About Fithian, yes. Okay. So, has Cypress or Kestrel moved to compel arbitration in that case? No. Okay. Although, in fairness to my co-counsel there, Mr. Fithian never signed an arbitration agreement. Okay. Fair enough. So, unless there's anything further, I'm going to proceed on. The Supreme Court, we agree with the folks at Enterprise. The Supreme Court tells us that a non-party to an arbitration can enforce that agreement in certain circumstances, but it's only if, quote, traditional principles of the relevant state contract law allow a contract to be enforced by the non-party. And it's important to note that the case that said that, Arthur Anderson, it broke from what was going on in the federal courts at that time. At that time, the concept of this federal common law of arbitrability was the rage. That was what was in vogue. And various courts were developing their own strands of arbitrability law, often quite distinct from traditional principles of state contract law. Arthur Anderson obviously found that was an error, and that's a notion that was re-informed by our Judge Gorsuch just last term when he said the opportunities for federal common lawmaking are few and far between. So, the question here is, what does Oklahoma's traditional contract law require? And the Oklahoma Supreme Court has repeatedly said what it considers to be equitable estoppel. And it matches up with the concept of equitable estoppel in almost every state in the nation, which is there needs to be a false representation by the party to be charged with equitable estoppel. That is not something that there is any evidence whatsoever of here. The other party has to have reasonably relied on that to its detriment. There's absolutely no evidence of reliance by the folks at Enterprise. Under Oklahoma law, equitable estoppel is a defense, and it's a defense used to prevent injustice and not to work a positive gain for a party. But that's exactly what not the plaintiffs, but we say somebody else is liable with us, then we're entitled to the benefit of that person's contract, even though we admit or don't provide any evidence that we knew about it or relied on it in any way. And so, you have taken the traditional notion of equitable estoppel and taken it from being a defense available to a misled party and making it into an offensive weapon that somebody accused of wrongdoing can wield based on its own description of the plaintiff's claims. Equity should not- Counsel, let me ask you this. Then what you're saying is that your client, under the facts that we have here, has no claim against Cypress or Kestrel, is that the way you and the fact that they are the plaintiff is the only employee of Enterprise, they have no claim against these other two companies where the arbitration agreement is? They have not asserted any claim against Kestrel. Oh, that's not my question about whether they've asserted. In your theory, they would have no claim against Crystal or Cypress or Kestrel. I don't know that- They're solely employees, under your theory, of Enterprise. And again, it is not our position that they have to be solely employees of Enterprise. They may well be employees of someone else. That is not what is asked under the FLSA. It's clearly not. What is asked under the FLSA is, do you have an employment relationship with this defendant? Yes or no. Whether or not you have a relationship with another defendant is irrelevant for the purposes of that question, from our perspective. So to the extent Judge Baldock says that you're saying they're not employed by Kestrel or Cypress, you deny that? We have not made that assertion. We have not. Okay. Where did Reeves get his paycheck from? So Reeves got his paycheck from Cypress, just like I get my paycheck from paychecks, as opposed to Bruckner-Birch. There are lots of people who get paid. The question is, where does the money come from and who are you economically dependent on? Right. Now that's a- If Cypress didn't pay him, who would he sue? He sued Enterprise. Really? Yes. Now, that's not exactly a fair characterization, I don't think, because paychecks, I'm assuming, is a payroll company that your firm uses. It is. I noticed that one of these persons is being paid by ADP. That's the equivalent of saying they're being paid by ADP, as opposed to Kestrel or Cypress. They're being paid. The payroll service, that's not a fair characterization. They're being paid by either Kestrel or Cypress. You can see that, don't you? No. That's not a fair characterization from our perspective, because the person with the work, the person paying the money, is Enterprise. The fact that it passes through the folks at Cypress, it, in our mind, is not what's dispositive. Because the question is, under the FLSA, is who is ultimately responsible for this? Who are you economically dependent on? Cypress isn't going to have that job. That work isn't going to exist independent of Enterprise. Well, my question was, Enterprise sends the money to Cypress and Cypress doesn't pay. Surely, the correct lawsuit is against Cypress and not Enterprise. If you are talking about a, well, under the FLSA, if you're not paid, you can sue any one of your employers for failing to pay you. You could absolutely sue Enterprise and say, look, I didn't get the money. Enterprise could say, look, I paid this person over here, go get your money from them. But under the FLSA, the liability runs to the employer. And so the employee could rightly say, I don't care that you sent your money to someone else. You owe me. And the FLSA absolutely gives, I mean, cases are replete on this point, that liability under the FLSA is joint and several, right? And so even if they are joint employers, as the folks allege, you can get a 100% recovery from any employer. And then they get to fight about, oh, well, I paid Cypress and Cypress should have paid you. All right. Yeah, I think we follow that. You know, your time's expired. Melissa, if you could put a minute 30 for rebuttal for Ms. Cowan. Thank you, Your Honor. Thank you. Thank you, Your Honor. First, let me start by answering Judge Timkovich's questions. And I would point you in the appellate record 13 to paragraphs 28 and 29 of the complaint in which Mr. Reeves alleges during Reeves' employment with Enterprise, it and or the company Enterprise contracted with exercised control over all aspects of his job. And there's an identical allegation in paragraph 29 with regard to the job duties. Second, I, too, am counsel of record in the Fithian matter pending in Tulsa. And I can explain also what happened, Justice Carson, or Judge Carson. To be clear, Mr. Fithian filed a collective action seeking to represent, among other people, also Mr. Reeves. Mr. Reeves was a putative member of the collective who submitted a declaration in support of collective action within days of bringing this case. And in that, he attested under oath, Cyprus required me to work 10 to 12 hours a day, five to seven days per week. This schedule was typical of all Cyprus inspectors. All of Cyprus' inspectors routinely worked more than 40 hours a week without receiving overtime compensation. And if you look at their declarations, both Mr. King and Mr. Reeves, paragraphs three in each say that Kestrel and Cyprus were their employers and Enterprise is their joint employer. And also, although not in the record, pardon? Go ahead and make your final point. If you were to remand this case to the district court for further evidence, you would find that, in fact, the evidence would show when these gentlemen filed for unemployment or workers' compensation, they bring those claims against Cyprus and Kestrel, never Enterprise. They are not – and these are not payroll service companies, as was evinced in the record. Yes, they do go to ADP, but these are professional service firms to whom Enterprise outsourced. All right. I think we understand your arguments. Thank you for the presentations this morning. Counsel, you are now excused and the case shall be submitted.